**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| KATHY GAULT (f/k/a Kathy Garis-Brueggemann), ) ) ) Plaintiff, ) ) -vs- ) ) LINCARE INC., ) ) Defendant. ) | Case No. CIV-06-854-F |

**ORDER**

Before the court is the Motion for Summary Judgment filed by defendant, Lincare Inc. ("Lincare") on July 2, 2007 (doc. no. 25). Plaintiff, Kathy Gault, f/k/a Kathy Garis-Brueggemann ("Gault"), has responded to the motion. Upon due consideration of the parties' submissions, the court makes its determination.

Background

Gault commenced this action on August 14, 2006. In the Amended Complaint filed December 11, 2006, Gault alleges claims against Lincare under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* In its motion, Lincare seeks summary judgment on Gault's claims.

Standard of Review

Under Rule 56(c), Fed. R. Civ. P., summary judgment shall be granted if the record shows that, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there

is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

Relevant Facts

Viewed in a light most favorable to Gault, as the non-moving party, the relevant facts are as follows. Gault is a former employee of Lincare. On July 26, 2001, Gault was hired by Lincare[1] in the position of center manager for Lincare's center located in Enid, Oklahoma. Gault had the responsibility for making sales calls on referral sources. Gault received a fixed salary plus discretionary bonuses dependent in part on the performance of the territories serviced by her center. At all relevant times to this action, Jerry Meloy ("Meloy"), an area manager, was Gault's supervisor.

Gault requested and received nine weeks of leave under the FMLA from October 18, 2002 through December 16, 2002, due to her pregnancy and the birth of her child. Gault's son was born on November 1, 2002. After her return to work, Gault had approximately three weeks of FMLA leave remaining until October 18, 2003.

---

[1] The parties, in their briefing, do not identify the nature of Lincare's business. According to its website, Lincare provides respiratory care, infusion therapy and medical equipment to patients in the home. *See*, http://www.lincare.com.

In January, 2003, Gault requested time off to take her son to the doctor. Although Gault had three weeks of FMLA leave left, the request was denied. The appointment was canceled.

On January 11, 2003, Meloy called Gault to give her a verbal reprimand for the failure of her center to meet its growth goals in November and December of 2002. Meloy informed Gault that a center manager for a center which has not met its growth goals for a period of three months could be replaced. Gault later inquired if the reprimand was for her or for the male sales representative who covered for Gault while she was on maternity leave. Meloy advised that the reprimand may be for both of them. However, to Gault's knowledge, the male sales representative was not reprimanded.

Gault requested time off to take her son to the doctor in March, 2003. The request was again denied and Gault had to cancel the appointment. On April 1, 2003, Gault took a vacation day to consult with an orthopedic surgeon for her husband.

On October 18, 2003, Gault had an additional twelve weeks of FMLA leave available for use until October 18, 2004.

In January 2004, Gault's son was hospitalized for several days due to a virus. Lincare was aware that Gault had to take time off due to her son's illness. Gault used three vacation days due to the hospitalization.

In March of 2004, Gault was transferred to Lincare's Guthrie, Oklahoma center.

In April of 2004, Meloy hired Kathy Brown ("Brown") as a sales representative. Brown was to assist with the opening of Lincare's new center in Stillwater, Oklahoma. Until the Stillwater center was profitable, Brown was to report to the Guthrie center. During the enrollment process, Brown advised Gault that she was pregnant. Gault informed Meloy of Brown's pregnancy, and he indicated that he wanted Brown out of there. When Gault questioned Meloy about terminating a

3

pregnant woman, he told her to find a reason to get rid of Brown. Shortly thereafter, Brown was terminated and replaced by a male, Sean Spiva ("Spiva").

Subsequently, Gault trained Spiva as a sales representative for Lincare's Stillwater center. After Spiva was trained, Meloy reorganized the territories between the Guthrie and Stillwater centers. As a result of the reorganization, Spiva received a large portion of Gault's territory. With the reorganization, Gault only had twenty-three referral sources to call upon for potential sales. Spiva had in excess of sixty referral sources.

Gault used two vacation days due to illnesses suffered by her and her son in April of 2004.

On May 3, 2004, Meloy issued a verbal reprimand to Gault that she needed to start doing thirty calls upon referral sources a week. Meloy also talked to Gault about missing so many days of work. Meloy told Gault she needed to be aware of setting a better example.

On June 15, 2004, Gault took a sick day due to a problem with her back. Gault was under a doctor's care and defendant was aware of her injury. Gault "filed AFLAC." Ex. 13, plaintiff's response.

On June 22, 2004, Gault took a vacation day because her child was ill with an ear infection and was admitted into the emergency room.

On July 9, 2004, Gault advised Meloy that she would likely need back surgery.

On July 14, 2004 through July 16, 2004, Gault requested and was granted vacation days to care for her son because his daycare facility was closed. Upon return, Meloy expressed anger toward Gault.

Prior to July 16, 2004, Gault requested Meloy to give her more territory to call upon and followed this request, on July 16, 2004 by e-mail. On July 18, 2004, Meloy e-mailed Gault that he would not give her more territory. Meloy claimed that Gault

was not calling upon her referrals and she had to focus on making thirty calls in her territory. Meloy also discussed that he and Gault needed to talk about the number of days Gault had missed work.

On July 19, 2004, Meloy gave Gault a verbal reprimand for missing too many days at work. Gault advised Meloy that she had used vacation days for her absences. Meloy informed Gault that she could not miss any more days of work that year.

On August 6, 2004, plaintiff resigned her position as center manager at the Guthrie location, effective August 20, 2004.

Subsequently, Meloy offered Spiva the position of center manager for the Guthrie location. Spiva, however, declined the offer.

Discussion

Constructive Discharge Claim

In this action, Gault asserts that in addition to receiving verbal reprimands, she received discipline from Lincare in the form of a constructive discharge. Lincare contends that Gault's resignation letter,[2] along with evidence that Gault received a

---

[2] The resignation letter to Meloy, dated August 6, 2004, states in pertinent part:

> I need to inform you that I have accepted a new position . . . and will be resigning my position as center manager . . . effective Friday, August 20, 2004. The position I have accepted is with a non-competitive company geared towards private duty.
>
> I have grown personally as well as professionally during my career with Lincare and am proud to have been a part of the management and sales force.
>
> Thanks for all the support you have given us especially during the fast paced growth that we have been experiencing since you came on board as area manager. My goal is to network with Lincare closely in the future as I see great potential for growth referring between the two companies . . . .

Ex. 2, defendant's motion.

5

salary increase in 2003, received a requested transfer and a salary increase in 2004, and would have received any bonuses earned by the performance of Stillwater center, negates any finding of a constructive discharge.

Constructive discharge occurs when an employer deliberately makes or allows the employee's working conditions to become so intolerable that the employee has no choice but to quit. MacKenzie v. City and County of Denver, 414 F.3d 1266, 1281 (10th Cir. 2005). A finding of constructive discharge depends upon whether a reasonable person would view the working conditions as intolerable, not upon the subjective view of the employee. *Id*.

Despite the evidence cited and relied upon by Lincare, the court concludes that taking the events and facts as described by Gault in a light most favorable to Gault, a reasonable jury could conclude that a reasonable person in Gault's position would have felt compelled to believe that there was no choice but to resign. The court therefore concludes that summary judgment is not appropriate on the constructive discharge claim.

FMLA Interference Claim

"The FMLA guarantees the substantive rights of up to twelve weeks of unpaid leave for eligible employees of covered employers for serious health conditions and reinstatement to the former position or an equivalent one upon return from that leave." Metzler v. Federal Home Loan Bank of Topeka, 464 F.3d 1164, 1180 (10th Cir. 2006) (citing 29 U.S.C. §§ 2612(a)(1), 2614(a)). "Under the FMLA, an employer may not "'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA].'" *Id*. (quoting § 2615(a)(1)). In order to prevail on an interference or entitlement theory of recovery,[3] Gault must demonstrate: (1) that she

---

[3] The Tenth Circuit has recognized two theories of recovery under § 2516(a): an entitlement or interference theory arising from § 2615(a) and a retaliation or discrimination theory arising from § 2615(a)(2). *See*, Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 960 (10th Cir. 2002).

was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights. *Id.* Under the interference or entitlement theory, a denial, interference, or restraint of FMLA rights is a violation regardless of the employer's intent, and the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), does not apply. *Id.*

In her response, Gault articulates various aspects of her FMLA interference claim. *See*, plaintiff's response, pp. 19-23. Lincare, in its motion, has not addressed all aspects of the claim as articulated by Gault. The court also notes that Lincare has not filed a reply to address the claim as articulated. The court concludes that Lincare has not shown that it is entitled to judgment as a matter of law on all aspects of the claim. The court also concludes, upon review of the record, that Gault has proffered sufficient evidence to raise a genuine issue of material fact as to the interference claim. The court therefore concludes that Lincare is not entitled to summary judgment on the FMLA interference claim.

FMLA Retaliation Claim

In her briefing, Gault asserts that she was retaliated against by Lincare for taking FMLA leave for the birth of her son. Gault specifically asserts that she was disciplined within weeks of her returning from FMLA leave. S*ee*, plaintiff's response, pp. 23-24. Retaliation claims under the FMLA are subject to the burden-shifting analysis of McDonnell Douglas. *See*, Metzler, 464 F.3d at 1170. Under this analysis, Gault bears the initial burden of establishing a prima facie case of retaliation. *Id.* If Gault does so, then Lincare must offer a legitimate, non-retaliatory reason for the employment action. *Id.* Gault then bears the ultimate burden of demonstrating that Lincare's reason is pretextual. *Id.*

In its motion, Lincare does not challenge the retaliation claim as specifically articulated by Gault in her response. Also, as previously noted, Lincare has not filed any reply to Gault's response. The court concludes that Lincare has not shown that it is entitled to judgment as a matter of law on the retaliation claim as articulated by Gault. The court also cannot say on the record before it that there is an absence of a genuine issue of material fact. The court therefore concludes that Lincare is not entitled to summary judgment on the FMLA retaliation claim.

Sex Discrimination Claim

In its motion, Lincare contends that summary judgment is appropriate as to Gault's sex discrimination claim on the basis that she failed to properly preserve her claim. According to Lincare, a formal charge of discrimination was not filed until December 7, 2006, almost two and one-half years after Gault resigned, and the charge, as filed, did not contain any allegations that she was a victim of sex discrimination.

"An employee wishing to challenge an employment practice under Title VII must first 'file' a 'charge' of discrimination with the EEOC." Montes v. Vail Clinic, Inc., __ F.3d __, 2007 WL 2309766, *1 (10th Cir. August 14, 2007). Under Title VII, such charge must be filed within 300 days after the alleged act of discrimination. 42 U.S.C. § 2000e-5(e). Martin v. Nannie & the Newborns, Inc., 3 F.3d 1410, 1414 n. 4 (10th Cir. 1993) (*overruling on other grounds recognized by* Davidson v. America Online, Inc., 337 F.3d 1179, 1184-85 (10th Cir. 2003)). If the employee does not submit a timely EEOC charge, she may not proceed to court. Montes, 2007 WL 2309766 at *1.

Gault contends that she timely filed a charge of discrimination with the EEOC. According to Gault, she filed a General Intake Questionnaire, Terms and Conditions, Questionnaire and Discharge Questionnaire with the EEOC on January 31, 2005.

Gault contends that these documents satisfy the EEOC minimum requirements for a charge of discrimination. In addition, Gault submits a declaration stating that she believed she had completed the necessary process to effect her charge of discrimination. Gault further asserts that the EEOC treated the documents as a charge as it notified both she and Lincare on February 7, 2005 that a charge had been filed.

In Jones v. UPS, Inc., __ F.3d __, 2007 WL 2677141 (10th Cir. September 13, 2007), the Tenth Circuit determined that an intake questionnaire fulfilled the filing of a charge of discrimination requirement "because the questionnaire satisfied the EEOC's minimum requirements for a charge, the circumstances of the case indicate[d] that [plaintiff] intended to activate the administrative process, and the EEOC ultimately treated the questionnaire as a charge." Id. at 4.

In reviewing the intake documents submitted by Gault, *see*, Ex. 25, plaintiff's response, it appeared to the court that at least one of the pages of the Discharge Questionnaire was missing. The court directed Gault to supplement the record with a complete copy of the Discharge Questionnaire. *See*, order (doc. no. 45). Gault orally advised the court's courtroom deputy that the missing page was for the General Intake Questionnaire. Gault also advised in writing that she does not have a complete copy of Exhibit 25 and Exhibit 25 contains all the pages that plaintiff and her counsel have. *See*, Notice (doc. no. 46). She has also stated in her briefing and presented evidence in support of her statement that the EEOC cannot locate her investigative file. Without the missing page, there is no record that Gault signed or verified the General Intake Questionnaire. She did, however, sign the Terms and Conditions Questionnaire which identifies the parties and the alleged discrimination based upon sex. It does not require verification by Gault.[4] Although the General Intake

---

[4] The Discharge Questionnaire does not require Gault's signature or verification.

Questionnaire is not signed and verified as required by the EEOC, 29 C.F.R. § 1601.9, the court nonetheless concludes under the circumstances that all intake documents submitted by Gault on January 31, 2005 are sufficient to satisfy the requirement of a filing a charge of discrimination within 300 days of the alleged act of discrimination. The documents comply with the EEOC requirements set forth in 29 C.F.R. § 1601.12. Moreover, the documents contain allegations of discrimination based upon Gault's sex. In addition, Gault states in her declaration that she believed she had completed the necessary process to effectuate her charge of discrimination against Lincare. Ex. 2, ¶ 57, plaintiff's response. Further, the evidence proffered by Gault shows that the EEOC treated the documents submitted by Lincare as a charge of discrimination. Exs. 6,7 and 23, plaintiff's response. Although the General Intake Questionnaire lacks Gault's signature and verification, the court concludes that Gault should not be penalized simply because the EEOC cannot find her investigative file. Welsh v. City of Shawnee, 1999 WL 345597, *5 (10th Cir. June 1, 1999) ("plaintiffs should not be penalized for the EEOC's negligence in handling a claim.")  Moreover, the Tenth Circuit has concluded that a subsequently filed formal charge may amend a plaintiff's unverified but timely filed EEOC "complaint" under 29 C.F.R. § 1601.12(b), at least where there is no showing of prejudice to the charged party. *See*, Peterson v. City of Wichita, Kan., 888 F.2d 1307, 1308-1309 (10th Cir. 1989). Lincare did not file a reply challenging the intake documents as constituting a charge of discrimination and the court, on the record before it, can see no prejudice to Lincare in allowing the formal charge to amend the unverified but timely filed General Intake Questionnaire. The court therefore concludes that Lincare is not entitled to summary judgment as to the sex discrimination claim.

Conclusion

Based upon the foregoing, the Motion for Summary Judgment filed by defendant, Lincare Inc. ("Lincare") on July 2, 2007 (doc. no. 25), is **DENIED**.

DATED October 5, 2007.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

06-0854p012(pub).wpd